No. 29,375.

The Weber Implement & Automobile Company, *Appellee*, v. C. Dubach, Christian Dubach, George Dubach, and —— Rickel, a Partnership doing business under the Firm Name of Rickel & Dubach et al., *Appellees* (The United States Fidelity & Guaranty Company, Intervener, *Appellant*).

(295 Pac. 979.)

Opinion filed February 7, 1931.

W. L. Wood, Arthur J. Mellott, both of Kansas City, and Perry A. Brubacher, of St. Joseph, Mo., for the appellant.

Benjamin A. Boeh, Maurice P. O'Keefe, Charles T. Gundy, W. P. Waggener, J. M. Challiss, O. P. May and B. P. Waggener, all of Atchison, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This action was one brought to collect for materials furnished a road contractor. An attempt was made to subject certain money in the hands of the state highway commission to the payment of this debt. The surety company for the contractor, which had paid some bills incurred by the contractor in building the road, intervened and claimed a prior lien upon the fund. The court appointed a receiver to secure the money from the state highway commission. This money was paid to the receiver. The court held that all parties were general creditors and that none of them had a preference, and gave judgment for each creditor *pro rata*. From this order and judgment the surety company appeals.

For the sake of clarifying the facts in this case the creditors of Rickel & Dubach, the contractors, may be divided into two groups. The first group consists of the Weber Implement & Automobile Company, the Austin-Western Road Machinery Company and J. R. Berridge & Sons Company. These companies are the ones who first brought suit against Rickel & Dubach and secured the appointment of a receiver. The second group consists of Carter Waters Corporation, Dan Quinton, an individual, Sinclair Oil Company and Branan Service Station. These companies and individuals had claims against Rickel & Dubach, were paid by the surety company and assigned their claims to that company. On account of these payments and assignments, which will be noticed later, this company claimed a prior lien upon the fund held by the state highway commission.

Two days before Rickel & Dubach entered into a contract with Atchison county for the building of a certain road it made an application to the surety company for a bond. Included in this application was an assignment of all the property of this firm and any money that should be held back by the county under the contract in question to the surety company. Some time later the contractor and surety company executed three bonds with reference to this road contract.

The appellant claims that one of these bonds was a common-law bond, and was not given under R. S. 60-1414, and that payments, which will be hereafter spoken of, were made under it rather than the statutory one. Hence, the limitation under R. S. 60-1414 as to the time within which action may be brought does not apply to payments made in this case. For the reasons stated above these bonds will be noticed here. Exhibit C-2 ran to Atchison county and is in the sum of $46,782.50. It provided:

"Now, therefore, if the above-named principal shall faithfully perform said contract, in every respect, and fully compensate said county for any and all loss or damage by reason of any default, failure or miscarriage in the performance thereof, and shall pay all indebtedness incurred for labor or material furnished in the construction, then this obligation shall be void, otherwise to remain in full force and effect."

This bond was executed by the surety company July 30, 1926, and taken and approved August 5, 1926. There seems to be little dispute but that this was what is called a "faithful performance" bond given under R. S. 68-704. We reach this conclusion because it is the only one of the three bonds which contains the language called for in the statute.

Exhibits B and C are each bonds. B is in the amount of $46,782.50, runs to the state of Kansas, is dated July 30, 1926, and provides:

"Now, therefore, if the said Rickel & Dubach shall well and truly pay and discharge all bills for labor performed and materials used in said work, then this obligation will be null and void, otherwise to remain in full force and effect."

This bond bears no marks of filing or approval by any public officer.

Exhibit C is in the amount of $56,782.50, runs to the state of Kansas, was executed July 5, 1926, taken and approved August 21, 1926, and provides:

"Now, therefore, if the said Rickel & . Dubach, principal, shall pay all indebtedness incurred for labor and materials furnished in the construction of said road as provided by the laws of the state of Kansas, then this obligation shall be void, otherwise to remain in full force and effect."

It will be noted that the only difference in the language of the two bonds is that exhibit C has added "as provided by the laws of the state of Kansas." This bond bears the approval of the clerk of the district court and the county clerk of Atchison county, Kansas, and the filing stamp of the highway commission. The record shows

that on August 19, 1926, the state highway commission requested the resident engineer to secure the approval of the clerk of the district court for "the contractor's statutory bond." That must have been exhibit C, because that bond was approved August 21 by that official.

In the intervening petition the execution of a statutory bond is pleaded and no other. Appellant put one of its agents on the stand who testified about the various assignments, payments and other matters connected with these bonds, and at no place did he say, or offer to prove, that one of the bonds was a common-law bond and that payments were made thereunder. In fact, proof is offered through him that the reason payment of claims was not made within six months after the contract was finished was that the company had promised to pay the claim holders; that they on that account withheld suit within the statutory time and hence tolled the statute. It is worthy of notice here that no witness for any of these claimants was presented to the court who testified to any such thing.

The trial court by the journal entry found all the facts in favor of appellee. Included in this finding must have been one that the payments were made under a statutory bond. We find nothing in the record to cause us to disturb that finding.

On December 6, 1927, construction of the road was completed. It should be noticed here that the surety company did not take this contract over and complete it. Rickel & Dubach went ahead and completed the contract to the satisfaction of everybody. The only reason any of the contract price was held back and not paid to Rickel & Dubach was that the state knew about some conflicting claims being made to this fund and was not certain to whom it should be paid. Some months after the completion of the contract the plaintiff in this case began its action against Rickel & Dubach and sought to garnishee about $5,000, which was being held by the county commissioners as the balance due the contractor. These garnishment proceedings were dismissed because it was an attempt to garnishee money in the hands of a public officer. Subsequent to this proceeding plaintiff moved to make the surety company a party to the suit. This motion was set down for hearing on a certain day. Appellees state that notice of that hearing was served on the surety company. Appellant insists no notice was ever served on it. At any rate a lawyer appeared at the hearing for Rickel & Dubach

and stated in open court that he represented the surety company. The motion was denied. Some months after this motion was denied and on dates ranging from September 7, 1928, to October 17, 1928, and more than nine months after the completion of the contract the surety company paid the claims held by the companies, heretofore alluded to as the second group of creditors. At the time these payments were made the surety company took assignment of these claims from each of these creditors.

October 9, 1928, Rickel & Dubach purported to make assignment of all amounts due from Atchison county to the surety company.

This becomes important because if this was a real assignment and made on that date, then it would give the surety company a prior lien since at that date the contractors had a right to assign this money to anybody to whom they wished.

This assignment was not recorded in the office of the register of deeds, and no one was notified of its existence till eight months after it was claimed to have been executed. The notary before whom it was alleged to have been executed was present in court at the hearing when it was attacked and did not take the stand and testify that it actually was executed on the date it bears. The only witness who testified with reference to it was an employee of the surety company, who said: "I cannot say that Mr. Dubach signed it." The trial judge heard this witness and saw him testify. He, no doubt, followed the testimony and had a better picture of it than a record can show. This court has held, in *Swartz v. Levin,* 108 Kan. 224, 194 Pac. 646, that "The trier of facts is not bound to believe evidence, the truth of which is not admitted, merely because no direct testimony to the contrary is introduced."

In *Sharp v. Losee,* 109 Kan. 211, 199 Pac. 94, it was held:

"The rule followed that a trial court or jury is not necessarily bound to believe testimony which was not directly contradicted by other evidence." (Syl. ¶ 11.)

On this point the execution of the assignment was denied under oath. There was only one witness who testified with reference to it. There were the suspicious circumstances heretofore detailed surrounding it. The court entered a journal entry of judgment, which was a general finding that appellant was not entitled to any lien or preference. From this general finding of the trial court it must be presumed that all matters were established in favor of the party for whom the court found.

"From a general finding of the trial court it must be presumed that all controverted matters are established in favor of the party for whom the court finds." (*Goode v. Cummings,* 115 Kan. 516, 518, 223 Pac. 317.)

We therefore conclude that the trial court was not bound to believe the testimony as to the assignment of October 9, and hence, in view of the general finding, must not have believed it to have been an authentic assignment and made on the date which it bears. His decision on that point will not be disturbed by this court.

Some months after the execution of the assignment above alluded to, the court, under R. S. 60-3496, restrained the defendants from transferring or disposing of the money due them from Atchison county. Subsequently the court appointed a receiver for the money due Rickel & Dubach from Atchison county, and following that ordered the state highway commission to pay this money to the receiver. This order was complied with by the state highway commission. Subsequently the surety company and all the parties filed pleadings and set up their claims to a prior lien on the fund in the hands of the receiver.

On October 24, 1929, the court gave judgment that the surety company was not entitled to any lien and that it was entitled to be subrogated to the rights of the general creditors of the contractor to the extent that the surety company had paid them, and that all the creditors of the contractor were general creditors, and were entitled to share in the fund without lien or preference *pro rata* according to their claims theretofore allowed on May 29, 1929.

The surety company appeals and asks a reversal of that judgment, basing the appeal upon four grounds, as follows:

1. That the surety company had an equitable lien against the fund on account of the contract of suretyship and the payment of the claims heretofore set out.

2. That the surety company had a prior lien on account of the assignment that the contractor made at the time the bond was written.

3. That on account of the assignments made by the second group of creditors at the times when the surety paid their claims against the contractor the surety company was subrogated to the rights of the creditors, and since the creditors had a prior lien, then the surety company had one.

4. On account of the purported assignment by the contractor on October 9, 1928, of all money coming to him from the county on this contract.

Of these grounds for appeal that one with reference to the assignment of October 9, 1928, we have discussed heretofore in this opinion and it needs no further attention. It is largely a question

of fact. The court below decided it adversely to the contention of appellant. We see no reason to disturb that ruling.

As to the other three grounds for appeal, that is, the question of equitable lien, the effect of the assignments made when the bond was written, and the subrogation of the surety company to the creditors, they can all be considered together, since in our opinion the answer to all of them depends upon what construction is to be given the bond executed by the surety company, and what was the effect of the payments made thereunder upon the rights of the parties.

At the outset it may be said again that the bond under which the contractor operated and under which the payments were made is a statutory bond given pursuant to R. S. 60-1413 and 60-1414. These two sections read as follows:

"That whenever any public officer shall, under the laws of the state, enter into contract in any sum exceeding one hundred dollars, with any person or persons for the purpose of making any public improvements, or constructing any public building or making repairs on the same, such officer shall take from the party contracted with, a bond with good and sufficient sureties to the state of Kansas, in a sum not less than the sum total in the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred for labor or material furnished in the construction of said public building or in making said public improvements."

"That such bond shall be subject to the approval of the clerk of the district court of the county in which such public improvement is to be made or such public building is to be erected and shall be filed in the office of said clerk. When such bond is so approved and filed, no lien shall attach under this article, and if when such bond is filed liens have already been filed, such liens shall be discharged. Any person to whom there is due any sum for labor or material furnished, as stated in the preceding section, or his assigns, may bring an action on said bond for the recovery of said indebtedness: *Provided,* That no action shall be brought on said bond after six months from the completion of said public improvements or public buildings."

Special attention is called to the last provision of the last section quoted above:

"That no action shall be brought on said bond after six months from the completion of said public improvement or public buildings."

The statute was enacted for the protection of laborers and materialmen who had furnished material and labor for public work and were not paid by the contractor and who, on account of the work being public in its nature, did not have a lien upon the work or building for the amount of their claims, such as they would have

had under R. S. 60-1401 if the work had been performed and material furnished to a contractor erecting the building or constructing other work not public in its nature. (*Road Supply & Metal Co. v. Bechtelheimer*, 119 Kan. 560, 240 Pac. 846.)

This court has held that an action against the surety company on a bond given in compliance with R. S. 60-1414 was barred if begun more than six months after the completion of the work. (*Dickey v. Guaranty Co.*, 107 Kan. 605, 193 Pac. 346.) The same rule has been announced many times with reference to the time for filing a mechanic's or materialman's lien where the work was done or the material furnished for a private person. (*Sonners v. Mollohan*, 112 Kan. 148, 210 Pac. 649.) The same reason which supports this rule will support the other.

We have seen in the present case that the payments to the second group of creditors, on account of which the surety company claims a prior lien upon this fund, were made nine months after the completion of the work. Under the rule heretofore announced these payments were made at a time when such payments could not have been enforced by the creditor against the surety and were voluntary on the part of the surety. Where does that leave the surety company as to its claim for an equitable lien? The theory upon which an equitable lien is based is that the surety is compelled under its contract of suretyship to either finish the contract by actually taking charge of the work or to pay materialmen or laborers who have put their labor and material into the work. It appearing that it is the credit and work of the surety company that makes it possible for the contract to be performed, then equity demands that the surety company should be reimbursed and have a prior lien upon any fund due the contractor from the municipality. The equity of that rule is readily seen. Since the law says to the surety company, "You must complete this contract," equity must say, "In return we will give you what there is left for your pains." But that is not the case here. There was nobody that could say to the surety company, "You finish the contract." It was already finished. There was nobody who could say to the surety company, "I labored on this job or I furnished material—you must pay me." The time for this had passed. As far as any obligation on its bond was concerned the surety company was entirely free of that transaction by the operation of the latter part of R. S. 60-1414, which requires that any claim made on a bond given in pursuance to that section must be brought in six months after the completion of the work.

Appellant argues vigorously and cites some respectable authorities on the question of an equitable lien, but the trouble about applying these authorities to this case is that in them the surety company was compelled to complete the contract or pay certain claims. Indeed, in *Exchange State Bank v. Federal Surety Company*, 28 F. (2d) 485, the third syllabus makes the rule dependent upon the fact that "the surety company was required to complete the contract." That case quotes from the case of *Henningsen v. U. S. Fidelity & Guaranty Co.*, 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547, as follows:

"In the Henningsen case, *supra,* the syllabus reads as follows: 'The equity of the surety on a bond given by a contractor under the act of August 13, 1894, 28 Stat. 278 (40 U. S. C. A. sec. 270), who by reason of the contractor's default has been obliged to pay materialmen and laborers, is superior to that of a bank loaning money to the contractor, secured by assignments of amounts to become due. In such a case the surety is subrogated to the rights of the contractor, but the bank is not.'" (p. 488.)

Note the language, "who by reason of the contractor's default has been obliged to pay materialmen and laborers." The surety company was not obliged to pay anybody in this case. Its duty was through when the six months were past. It is true that there was some evidence offered that payment of these claims was not demanded by the creditors and suit brought to compel it because of promises made by the surety company. However, from an examination of the record in this case that evidence was very unsatisfactory and, as has been noticed heretofore in this opinion, the journal entry of the trial court constituted a finding by him of all the material facts in conformity with that judgment, and should not be disturbed by this court on appeal.

Moreover, it might have been somewhat persuasive upon the court below on this point that appellant did not plead in its intervening petition that promise had been made to pay these claims or any other reason why these payments were made after six months had passed.

These reasons apply with equal force to the claim of appellant that the assignment made at the time the bond was written gave the surety company priority. That assignment had spent its force when the six months had expired from the completion of the work without any suit being filed by any laborer or materialman against the surety.

The same as to the right of subrogation. The surety company was subrogated to their rights when it made the payments to them. What were these rights? Merely those of a general creditor. They had no rights against the surety company because they had not filed any action within six months. The bond was simply a nullity as to them, and there was no relationship existing between them and the surety company whatever. The appellant urges that since these claims were not barred under the statutory bond as to Rickel & Dubach the payment of them by the surety, even though the one was barred as to the surety but not as against the principal, would not be voluntary, and cites the following:

"If the surety pays after the debt is barred, both as to him and to his principal, he cannot recover; but if the debt is not barred as to the principal, the surety can waive the statute of limitations for himself and payment under such circumstances will not be voluntary." (32 Cyc. 259.)

That rule, however, applies to the right of the surety company to recover against the contractors and not to the creation of any prior lien on moneys held for the benefit of creditors. The rule that applies to this case is that laid down in 32 Cyc. 282, which reads as follows:

"Payment by one of the cosureties after the claim against them has been barred by the statute of limitations is voluntary and does not entitle him to contribution from the other cosureties."

The court below held that the surety company was subrogated to the rights of the creditors and that it was entitled to have as much of this money that it had expended paid to it in the proportion that that amount bore to the whole amount held.

The appellant argues that this was not an action in which it was proper to appoint a receiver and that the court erred in appointing a receiver and using some of the money being held for creditors for the purpose of paying the expenses incident to that appointment. We have examined the record on that point and are of the opinion that this was a case where the court had a right to exercise its discretion as to whether or not a receiver should be appointed for that fund.

There is an appeal here on the part of Rickel & Dubach from the various judgments and orders entered in the case, but what has been said here already applies with equal force to that appeal.

The judgment of the lower court is affirmed.