No. 30,045.

W. H. Boucher, *Appellee*, v. H. N. Conley, *Defendant* (The
Union National Bank and C. C. Whittaker, *Appellants*).

(5 P. 2d 820.)

Opinion filed December 12, 1931.

*W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair* and *W. A. Kahrs*, all of Wichita, for the appellants.

*John Madden* and *John Madden, Jr.,* both of Wichita, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was a suit for money. Judgment was for plaintiff. Appellants were served with summons as garnishees. Issue was joined on the answer of the garnishees. Judgment was entered directing the payment of the money to plaintiff. The garnishee and interpleader appeal from that judgment.

C. C. Whittaker had entered into a contract with H. N. Conley, under the terms of which Conley was to drill an oil well on a lease owned by Whittaker. Among other provisions Whittaker was to pay Conley $2,500 when the drill rig was completed and $2,500 when the well was spudded in. Whittaker deposited $5,000 in the Union National Bank to secure payment of these amounts under the terms of the contract. The rig was to be free of all liens and encumbrances. It was built and the $2,500 was paid. After the well was spudded in the transactions occurred that are the subject of this suit.

Subsequent to the building of the rig Conley became financially involved. The Oil Well Supply Company had a claim against him for supplies furnished in the building of the rig in the amount of $1,510.28. On March 16, 1928, a conference was held at the Union National Bank at which were present Whittaker, Conley, a Mr. Palmer, the escrow agent at the bank, and a man named Bosely, who had made good some bad checks that Conley had issued to pay for supplies used in building the rig. At that time an order was

given by Conley and consented to by Whittaker to the Oil Well Supply Company for the full amount of its claim. The order was in writing and was paid that day.

At the same time a transaction occurred which appellant insists was an oral assignment of what was left of the $2,500 to Bosely. Mr. Palmer testified as to what occurred. Mr. Bosely and Mr. Whittaker testified to substantially the same effect as to an oral assignment being made. This conference occurred at the bank on March 16, 1928, at between nine and ten o'clock in the forenoon. That afternoon about two o'clock the garnishment summons in this case was served. A written assignment to the same effect as the oral assignment referred to was given March 18, and the money was paid then.

When the bank was served with the garnishment summons it answered, at first stating the amount Conley had on deposit. Later it filed an amended answer setting out the facts as they have been detailed here. Whittaker answered that he owed nothing. Exceptions were taken to these answers. Trial was to the court. Findings were made that there was no oral assignment and that the balance on deposit in escrow after the payment to the Oil Well Supply Company was the property of Conley. Judgment was that the bank pay this amount to appellee.

From this judgment the appeal is taken.

Appellants urge first that there was an oral assignment of the money left in escrow in the forenoon of the day in the afternoon of which the garnishment was served on the bank. Cases are cited which hold that an oral assignment is good. We have no quarrel with that statement of the law. In this case, however, the court found as a finding of fact that there was no oral assignment. Appellant complains that what the court said was that "no clear showing that there had been an oral assignment" had been made. It is argued that all that is required is a showing by a preponderance of the evidence. It is pointed out that there was substantially no dispute in the evidence, and that hence the finding should be set aside. We conclude that what the court meant by the language quoted was that it was not satisfied that there had been an oral assignment. Such language has the same effect as more formal language that might have been used. As long as there was any evidence to sustain the finding it will not be disturbed. The rule is

that the trier of facts is not bound to believe undisputed testimony merely because no direct testimony to the contrary is offered. (*Weber Implement & A. Co. v. Dubach,* 132 Kan. 309, 295 Pac. 979, and cases there cited.) A circumstance which must have had considerable weight with the court in reaching the conclusion that it did reach was the fact that even though the circumstances testified to did occur the same parties executed a written assignment on March 18, two days after the garnishment summons was served.

Appellant also argues that on the day when the garnishment summons was served Conley could not have enforced any liability against Whittaker, and so money on deposit in escrow could not be garnisheed for a debt of Conley's. This argument is based on the fact that under the terms of the contract between Conley and Whittaker the rig was to be put on the lease free and clear of all liens and encumbrances. He points out that the rig was not free of liens on the date when the garnishment summons was served. On that account he argues nothing was coming to Conley from Whittaker. Hence the money in escrow was not subject to garnishment. The liens referred to were all filed some months subsequent to the serving of the garnishment. The court made a finding as a matter of fact that the money on deposit in the escrow account was the property of Conley when this was served. We conclude that this finding was sustained by the evidence. Since this is true, then the bank had money in its possession belonging to Conley and it should have so answered the garnishment summons.

The judgment of the trial court is affirmed.