No. 31,308

ARTHUR KEPLAR, *Appellee*, v. FRANK WEIR, F. E. NAYLOR et al., *Appellants*.

(31 P. 2d 49.)

Opinion filed April 7, 1934.

*E. W. Grant,* of El Dorado, for the appellants.

*Stanley Taylor* and *K. M. Geddes,* both of El Dorado, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to set aside a deed. Judgment was for plaintiff. Defendants appeal.

Plaintiff alleged that on September 2, 1931, he was the owner and in possession of a house and lot in El Dorado, Kan., and that he had been negotiating with defendant, Frank Weir, relative to exchanging his house and lot for eighty acres of land in Saline county owned by Weir. He alleged that Weir represented that he owned this eighty acres clear of encumbrance except for a mortgage in favor of a life insurance company in the amount of $1,400 and another in the sum of $250 in favor of T. P. Wheatley. He alleged that defendant represented to him that he would convey the eighty acres owned by him, subject only to the two mortgages mentioned, in consideration of the conveyance to him of the house and lot owned by plaintiff; that plaintiff agreed to do this and that deeds were exchanged. Plaintiff further alleged that defendant Weir furnished him an abstract of title purporting to show all the instruments of record affecting the title to the eighty acres, and that the abstract did not show one mortgage on the land to T. P. Wheatley

in the amount of $274.06, and that defendant Weir knew about this mortgage and withheld this information from plaintiff for the purpose of cheating and defrauding him. Plaintiff further alleged that he believed the representations of Weir with reference to the two mortgages and relied upon them and believed Weir to be the owner of the eighty subject only to the two mortgages, and believed the instrument by which Weir conveyed the eighty to him to be a good and sufficient warranty deed, when, as a matter of fact, it was a quit-claim deed. The plaintiff further alleged that immediately after the exchange of deeds he caused his deed and the abstract of title to be examined by a lawyer and learned about the deed being a quit-claim deed and about the undisclosed mortgage, and that defendant Weir learned of this and immediately he and his wife conveyed the house and lot in El Dorado to one F. E. Naylor and caused that deed to be delivered to the register of deeds for recording. The plaintiff further alleged that the deed from Weir and wife to Naylor was without consideration and void, and that it was executed by the Weirs with the intent to defraud plaintiff. The plaintiff further alleged that the register of deeds had not recorded this conveyance, but would do so unless restrained; that Naylor was not in possession of the real estate in question, but that he would enter into possession unless restrained and the title to the real estate would vest in some innocent party and plaintiff be precluded from recovering his property, and to that extent he was without an adequate remedy at law.

Plaintiff tendered into court the deed to the eighty acres, executed by Weir and his wife, and offered to reconvey this real estate to Weir.

Plaintiff prayed that the deed conveying his house and lot to Weir be canceled; that Weir and his wife be ordered to reconvey the house and lot to him; that the deed from Weir and wife to Naylor be adjudged null and void, and for other temporary relief.

Defendants Frank Weir and Mary Weir answered that at all times Weir advised plaintiff that the eighty in Saline county was subject to one mortgage in the amount of $1,400 and another in the amount of $500; that they did not know that the indebtedness to Wheatley was divided into two mortgages and therefore referred to it as a mortgage to Wheatley for $500; that defendants had nothing to do with the abstract of title and do not know what it showed;

defendants denied that they ever at any time concealed anything from plaintiff or that they ever misrepresented any fact. The answer further alleged that during the exchange it became necessary for defendants to lay out $140 and that plaintiff still owed that amount to defendant; that after the expending of the $140 and the exchange of deeds these defendants conveyed the El Dorado property for a valuable consideration to F. E. Naylor, and that the consideration involved was a quarter section of land in Pottawatomie county, and that after the trade Naylor had rented the El Dorado property to defendant Weir and is receiving a monthly rental for it; that Naylor is the actual owner of the El Dorado property and is entitled to have his deed recorded; that plaintiff is not entitled to any relief, and that defendant is entitled to a judgment against plaintiff in the sum of $140. Defendant prayed judgment for this amount and that the prayer of plaintiff be denied.

Defendant Naylor answered by a general denial of the allegations of the petition. He further stated that he traded a farm in Pottawatomie county for the El Dorado property; that possession of the farm was delivered to Weir; that he was renting the El Dorado property to Weir for a monthly rental; and that when Weir was returning to his home in El Dorado after the trade had been consummated defendant asked Weir to take his deed to the register of deeds office and record it for him and return the deed to defendant; that defendant was an innocent purchaser for value of the El Dorado property. The answer prayed that the prayer of the plaintiff be denied.

Trial was to the court.

Keplar, the plaintiff, testified that Weir told him there was a first mortgage of $1,400 to a life insurance company, and a second mortgage of $500 to T. P. Wheatley, one-half of which had been paid; that Weir showed plaintiff some receipts that he had received from the insurance company showing payment on the mortgage; that after Weir had looked at the place of plaintiff the trade was made; that he was unable to get the money to pay for the taxes and abstract, and that Weir agreed to take the money for an oil lease that was on the Saline county land and to take Keplar's note for the difference necessary to pay the taxes and for the abstract. Plaintiff further testified the agent of Weir gave him his deed and he took it home; that he did not get the receipts; that he does not know

Naylor; that after he got his abstract he saw where Wheatley made a claim that he had a $500 mortgage; that that was the first time he ever heard of a $500 mortgage. The father of Keplar testified that he heard Weir tell Keplar that there was a $1,400 mortgage and a $500 mortgage that was half paid. The brother of Keplar testified that he heard plaintiff speak about the mortgage after he had examined the abstract and that he said if the mortgages were $1,400 and $250 it was all right, but that if the second mortgage was $500 he was dissatisfied. The wife of Keplar testified that Weir said there was a first mortgage of $1,400 against the place and a $500 mortgage, half of which had been paid. Recalled, Arthur Keplar testified that he relied on the statement that there was a first mortgage of $1,400 and a second of $250 against the place.

For the defense Weir testified that he told Keplar there was a first mortgage of two thousand or twenty-two hundred with seven notes of $205 paid off; that he never did tell Keplar there was a second mortgage of only $250; he thought there was a second mortgage of $500; that he traded the Keplar house with Naylor for 120 acres in Pottawatomie county with $2,200 against it; that when he was up there Naylor asked him to bring his deed down and record it; that the eighty was sold to him for $2,600 and there were the two mortgages against it; that he didn't pay anything for the place; that Naylor is related to him by marriage. A. H. Murphy, the real-estate agent, testified that Weir told Keplar there was a second mortgage of $500.

F. E. Naylor testified that he bought the 120 acres in Pottawatomie county in August, 1931; nobody lived on it; he conveyed it to Weir October 10, 1931; in consideration he received the deed to the El Dorado property; he had looked at the property; he rented it to Weir for $10 a month; he took in twenty-two hogs at the price of $60 to apply on the rent; the loan on the 120 had to be fixed up and he wanted to get rid of it; he bought the equity for $750; paid it in money; didn't own any other land; does not own any now except the El Dorado lots; ran into Weir at Fairbury and asked him to take his deed down and record it; cannot think of the name of the man from whom he bought the land; he did not know then how much of a mortgage was on the place; saw the owner, but cannot recall his name; did not find out when the mortgage was due nor whether the interest was paid. He further testified he got some

stuff together and sold it and went to Concordia to try and buy this land; that he had bought the place for a home but could not get the mortgage fixed up so he traded with Weir.

E. W. Grant testified that Weir informed him that he never told Keplar there was a $1,400 mortgage on the place, but that he said there was a large mortgage in the sum represented by the receipts shown plaintiff. Defendant asked permission to amend the answer to conform with proof in that respect.

The court found the issues generally in favor of the plaintiff and against all the defendants.

The court set aside the deed from the Weirs to the Keplars; the deed from the Keplars to the Weirs and the deed from the Weirs to the Naylors. The court further canceled the note from Keplar to Weir and found that Naylor and Weir should retain the rents from the El Dorado land but that they had no claim for the taxes that they had paid.

Defendants appeal, and allege as error that there was no evidence to support the findings and judgment of the trial court.

The pleadings presented a clear-cut issue of fact. Between Keplar and Weir it was—Did Weir misrepresent as to the amount of the second mortgage? Did Keplar rely on it? (*Carpenter v. Wright*, 52 Kan. 221, 34 Pac. 798.) The evidence was conflicting, but it cannot be said that there was no such evidence. There was the testimony of four or five witnesses as well as some highly persuasive circumstances. The issue between Naylor and Keplar was—Did Naylor give any consideration at all for the conveyance to him of the El Dorado property? The court heard the testimony of Naylor. No doubt the court considered the circumstances. The court was not bound to believe Naylor's testimony merely because it was not contradicted. (See *Sharp v. Losee*, 109 Kan. 211, 199 Pac. 94; also, *Weber Implement & A. Co. v. Dubach*, 132 Kan. 309, 295 Pac. 979.)

The judgment of the trial court is affirmed.