C. C. HAMILTON *et al.* v. GEORGE M. MILLER, *as Cashier of First National Bank of Wellington.*

1. CROSS-EXAMINATION — *Limits.* While a trial court should always be liberal in permitting a full and exhaustive cross-examination, yet it may nevertheless, in the exercise of a sound judicial discretion, impose reasonable limits.

2. ———— *Reëxamination.* Where a matter of evidence is brought out for the first time on the cross-examination of a witness, the other party may reëxamine upon the same matter.

3. ———— Other matters considered.

4. ———— Immaterial errors must be disregarded.

5. CHATTEL MORTGAGE — *Sufficiency of Description.* Where L., claiming to be the owner of certain cattle, mortgages them to M., and afterward, in an action in which M. is the plaintiff and L. and C. are defendants, C. claiming to own the cattle and to have owned them

as against L. at the time when they were mortgaged by L. to M., and L. admits the validity of the mortgage, it is immaterial, as between M. and C., whether the mortgage contained a perfect description of the cattle or not.

*Error from Sumner District Court.*

REPLEVIN. The facts are stated in the opinion. Judgment for plaintiff, *Miller*, at the November term, 1887. The defendant *Hamilton* and two others bring the case to this court.

*McDonald & Parker*, for plaintiffs in error.

*George, King & Schwinn*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin, brought in the district court of Sumner county by George M. Miller, as cashier of the First National Bank of Wellington, against L. W. Hamilton, C. C. Hamilton, John H. Hamilton, and —— Horsley, to recover certain neat cattle, of the alleged value, in the aggregate, of $9,450. The plaintiff claimed a special ownership therein, with the right to the immediate possession thereof, under a certain chattel mortgage executed by L. W. Hamilton, as the owner of the cattle, to Miller, as cashier, etc. The case was tried before the court and a jury, and the jury found generally in favor of the plaintiff and against the defendants, and also found that the value of the property in controversy was $4,305, and that the amount of the mortgage debt was $6,223.56; and the court rendered judgment accordingly in favor of the plaintiff and against the defendants in the alternative for a return of the property, or for the value thereof, to wit, $4,305, together with interest and costs; and all the defendants except L. W. Hamilton bring the case to this court for review, making themselves the plaintiffs in error, and George M. Miller, cashier, the defendant in error. The only substantial question involved in this controversy is, whether the aforesaid L. W. Hamilton was the

owner of the cattle in controversy at the time of the execution of the aforesaid chattel mortgage, or whether the aforesaid C. C. Hamilton, his father, and John H. Hamilton, his brother, were at that time the owners thereof. Ample evidence was introduced on the trial to prove that L. W. Hamilton was the owner of the cattle, and that his father and brother were not the owners; and therefore that question must now be considered as at rest. But it is claimed by the plaintiffs in error that various errors occurred during the trial in the court below, which will require a reversal of the judgment of that court. Whether this is correct or not, we shall now proceed to consider.

The first and principal claim of error, as stated in the brief of counsel for the plaintiffs in error, is as follows:

"The evidence showed that L. W. Hamilton did not claim any cattle except those he claimed to have bought from his father, and their increase, and that there were about 30 or 35 head of cattle bought by John (J. H. Hamilton), in 1884 or 1885, and put in the herd. They were marked in the same way as the balance of the herd, and were never separated from it up to the time the suit was brought; yet when L. W. Hamilton was put on to prove his title to the cattle included in the mortgage, and their identity with the cattle he had bought from his father, the court refused to permit the defendants to show, upon the cross-examination of said witness, as to how many of those cattle were separated from the cattle taken in replevin, although the witness assisted in making the separation."

Counsel for the defendant in error, who was plaintiff below, answer this as follows:

"The court did not refuse to permit the defendants to show, upon cross-examination of L. W. Hamilton, how many of the said 30 or 35 head of cattle were separated from the cattle taken in replevin, as claimed in the brief of the plaintiffs in error, but, on the contrary, allowed very great latitude in the cross-examination of witness upon that question, and only refused to allow such examination continued after it had been thoroughly gone over by the witness on cross-examination."

The question objected to, and the objection and the ruling of the court thereon, as shown by the record, are as follows:

"Ques. How many of those cattle that John put in there did you pick out?

"(Counsel for plaintiff objects to this question for the reason that it has been answered, and for the further reason that the witness shows that he cannot tell. The court sustains the objection.)"

Up to this point the record contains about 70 pages, in type-writing, of cross-examination, about five times as much as all the examination-in-chief, "and the end is not yet." This matter had already been amply gone over on the cross-examination. And the record shows specifically, with respect to this matter, that the following, among other questions had been propounded and answered, to wit:

"Ques. How many did you pick out? Ans. I don't know; I didn't keep any memorandum; it seems to me, though, that it was some 20, may be 30; I don't recollect just how many."

While a trial court should always be liberal in permitting a full and exhaustive cross-examination, yet it may nevertheless, in the exercise of a sound judicial discretion, impose reasonable limits.

The next claim of error is, that the court below permitted L. W. Hamilton on his redirect examination to testify as to threats made to him by a Mr. Horsley, who claimed to have purchased from the witness's father and brother a portion of the cattle. The question and answer objected to are as follows:

"Ques. What did he say about your getting out of the country? Ans. He said that I had better get out of the country."

This had reference to matters testified to upon the cross-examination of this witness, and brought out originally and for the first time by the defendants below, a portion of which testimony brought out on cross-examination is as follows:

"It was right at the time—the morning after the cattle were attached. Mr. Horsley came up there and tried to bluff me, but I did not take a bluff very well. He told me that if

I did not get out of the country that they would put me in the penitentiary."

Certainly no error was committed by the trial court in permitting the plaintiff, after the foregoing testimony was given on the cross-examination, to ask and to have answered by the same witness the above question on the re-direct examination.

The next supposed error is, that the court below permitted a witness to answer a question over an objection of the defendants that the question was "double" and "leading." No error was committed in this respect, either in substance or in form.

The next complaint is, that the court below permitted the plaintiff to prove the signature of the wife of C. C. Hamilton; but in what respect this was prejudicial, is not shown.

There are many other supposed errors, but we do not think that it is necessary to mention all of them, nor to follow them in their order as presented by the plaintiffs in error.

Of the remaining alleged errors, the ninth is perhaps the most serious. The court permitted evidence of conversations had between the defendant L. W. Hamilton and others, not in the presence of any of the other defendants, tending to show that L. W. Hamilton was the owner of the cattle in controversy. The most of these conversations were had while L. W. Hamilton was in the actual custody of the property, and were therefore competent as evidence, not only as against him as a defendant, but also as against the other defendants. But some of them were possibly had at a time and place when and where L. W. Hamilton was not in the actual custody of the property. But in the light of the whole evidence — over 750 pages of type-writing — the error, if error, was wholly immaterial, and immaterial errors must be disregarded.

In answer to the tenth supposed error, we might say that there can be no question in this case with regard to any supposed imperfect description of the property in controversy as contained in the mortgage. L. W. Hamilton, the mortgagor, is not complaining of any imperfect description, and if the property really belonged to him, as he claims, then the other

defendants can have no reason to complain. The other de-
fendants can have no right to recover property which does not
belong to them. But the description was sufficient.

There was sufficient evidence introduced on the trial to au-
thorize the giving of the instruction with regard to estoppel;
but even if there was not, still no sufficient exception was taken
to that or to any other instruction.

Believing that substantial justice has been done in this case,
and that no material error has been committed, the judgment
of the court below will be affirmed.

All the Justices concurring.