No. 28,912.

J. M. RAGLAND, *Appellant*, v. THE WATKINS NATIONAL BANK, *Appellee.*

(283 Pac. 632.)

Opinion filed January 11, 1930.

*M. A. Gorrill,* of Lawrence, *J. Walter Farrar* and *O. C. Phillips,* both of Kansas City, Mo., for the appellant.

*Walter G. Thiele,* of Lawrence, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action for conversion of 135 head of cattle on which the plaintiff claims a lien by chattel mortgage and charges the defendant bank with having taken and sold the cattle and converted the proceeds to its own use. The defendant bank admits the taking and selling of 135 head of cattle, but denies the right of any lien by the plaintiff on them and asserts an agistor's lien and chattel-mortgage lien of its own on the cattle it took and sold. The mortgagor, W. P. Dorman, had given a chattel mortgage to each party on cattle described therein and left the country before the confusion arose, and was not at the trial. The question was

largely one of identity or description of cattle. The case was tried by the court without a jury.

The mortgagor owned a ranch in Crawford county about three miles north of Girard, the county seat, and resided thereon during 1927 until the latter part of October. He rented another cattle ranch from the defendant bank which was located in Bourbon county, about twenty-two miles northwest of Girard. Between the first and middle of April, 1927, the plaintiff sent down from Kansas City to the mortgagor 39 head of coming two-year-old steers, all dehorned and all except five, whitefaces, which the mortgagor put in the bank pasture in Bourbon county. On April 16, 1927, the mortgagor gave to the bank a chattel mortgage on 150 head of steers, describing as mostly reds, 116 coming three years old and 34 coming two years old, as being kept on the bank pasture in Bourbon county rented by him from the bank. On May 12, 1927, the plaintiff took down to the bank pasture 100 more steers described as 59 western steers one to three years old, some reds, mostly whitefaces, and 41 coming two- and three-year-old steers, 6 whitefaces, others pale spotted, red Durhams and black Angus, and that day took a chattel mortgage from the mortgagor covering 139 head, all branded with 1 quarter circle brand. This mortgage described them as being kept on the Dorman ranch in Crawford county eight miles from Farlington; post office, Girard, Kan.

On October 12, 1927, this mortgage was renewed, describing 139 steers the same as before and added 124 other cattle which are not here involved, and stated that all the above cattle are located on the Dorman farm three miles north of Girard, in Crawford county.

Later in October, 1927, the defendant bank, learning the cattle on the bank ranch had been attached by some outside party, visited the ranch, found the cattle in bad condition and Dorman, the owner, gone, arranged for the release of the attachment and shipped the cattle to Kansas City and sold them on the market. The plaintiff and three other witnesses describe the 139 head of steers as being the only cattle on the bank ranch that summer and fall, and describe their condition and their weight, giving other particulars. Witnesses for defendant describe the 135 head of cattle taken from the bank pasture October 31, 1927, and sold on the Kansas City market November 1, 1927, with very great difference in descriptions from that given by witnesses for plaintiff. Sale sheets of weight were introduced in evidence showing actual weights when sold.

After hearing the evidence the court found in favor of the defendant, holding that the cattle sold by the defendant were not those described in the mortgage of plaintiff, and rendered judgment for defendant, from which plaintiff appeals.

The appellant contends that the court erred in disregarding the uncontradicted evidence in the case and asserts that the appellant was entitled to recover on such uncontradicted evidence, referring especially to that of the plaintiff, who sent down the 39 head and accompanied the 100 head himself to the ranch, also the evidence of the caretaker on the ranch and the brother of Dorman, the owner, that there was no change in the cattle on the ranch that season and no other cattle were there except the 139 head. There was no evidence to contradict any of those and other similar statements, but defendant says these cattle on the bank ranch were not the cattle included and described in the mortgage. Even if plaintiff had to do with the sending down of the cattle, unless the mortgage was on them he could not prevail in the present action. One of the discrepancies is the place where the cattle were to be kept. The mortgage says on the Dorman ranch in Crawford county. The first mortgage given May 12, when the plaintiff was with the cattle on the bank ranch in Bourbon county, described the place as in Crawford county, and six months later when it was renewed it referred to the same ranch as the Dorman farm three miles north of Girard in Crawford county. There is no dispute as to where the cattle in question were kept all the time—not on the Dorman farm in Crawford county, but always on the bank ranch in Bourbon county. Appellant is correct in stating this mislocation does not come under the class where someone is misled by such erroneous location, for the mortgage of the defendant bank was taken nearly a month earlier than that of the plaintiff. However, it does go to the question of helping to identify the cattle covered by these two mortgages and particularly that of the plaintiff. The evidence shows there were 4 heifers included in the 135 head sold November 1. No one claims that they were included in the mortgage of the plaintiff, and there is nothing strange or unusual for strays or a few others to become mixed in any bunch of cattle. The caretaker spoke of several head breaking out of the pasture and his getting them back, and accounted for one that was held by a neighbor. But the greatest difference between the cattle described by the plaintiff and those sold is a difference in their weight and the scarcity

of whitefaces among them. The cattle sold were shown by the weight bills to average between 600 and 700 pounds and only a very few whitefaces among them, whereas the cattle described by the plaintiff and his witnesses were very much heavier after allowing for reasonable shrinkage in shipment, and there should have been more than 65 whitefaces by the description in the mortgage. There was also evidence about the cattle sent to the pasture being branded as described in the mortgage of plaintiff, but the evidence as to the cattle shipped is not helpful for identification as to the brands. The same difficulty exists in attempting to identify them with reference to their being dehorned—nothing very definite either in the mortgage or in the oral testimony.

Cases are cited by appellant holding that the triers of facts are not at liberty to disregard uncontradicted and unimpeached testimony, which is the recognized rule, but there is in all of them the question of reasonableness of the statements of fact, the credibility of the witnesses and the sufficiency of the evidence. In this case the latter is most important. Without even discounting the testimony of any of the witnesses for the plaintiff as far as their testimony went, there still remains an open question as to whether the cattle taken by the defendant bank were the actual cattle described in and covered by the mortgage. That part is contradicted, and without that feature of identification, there is not enough uncontradicted evidence to make the case for the plaintiff.

"When the burden of proving the material averments of a petition is upon the plaintiff it cannot be determined, as a matter of law, that the jury are bound to accept the evidence as true, although not contradicted; the weight and sufficiency of testimony to prove a fact thus in issue is for the jury in the first instance, subject to the supervisory powers of the court to be exercised afterward, if found necessary." (*Harrod v. Latham,* 77 Kan. 466, syl. ¶ 5, 94 Pac. 11. See, also, *Railway Co. v. Groff,* 77 Kan. 551, 554, 95 Pac. 394; *Smith et al. v. Gregg,* 117 Kan. 507, 232 Pac. 217.)

Appellant urges that appellee was not entitled to attack the sufficiency of the description of the cattle in the mortgage, citing many cases based upon the recording act and the rights of third parties thereunder. We can concur in all such rulings without a solution of the all-important question here involved. Both parties here claim mortgages on the same cattle. The appellant assumed the burden of identification. There is no question about the validity of either of the mortgages. Appellant's mortgage may be admitted as being good on some cattle somewhere, but what cattle? The question in

the case of *Hamilton v. Miller,* 46 Kan. 486, 26 Pac. 1030, was who owned the cattle on which the mortgage was given. If the mortgagor did, it was no concern of the others who claimed to own them how they were described in the mortgage, for the mortgagor admitted the giving of the mortgage on the cattle in question.

The trial court found in this case that the cattle shipped to the market and sold by defendant were not shown to be the cattle covered by the chattel mortgage held by the plaintiff. It was incumbent upon the plaintiff to show that they were, and the uncontradicted evidence in the case does not, in our judgment, establish that identity, and we therefore find no error in the finding or judgment of the trial court.

"In the present case it is held that the description of certain cattle in a mortgage, together with inquiries suggested by it, did not fairly lead to the identification of the cattle in controversy, and that as the plaintiff failed to produce substantial evidence in support of his claim that the cattle in controversy were included in the mortgage, no error was committed in directing a verdict in favor of defendants." (*Ehrke v. Tucker,* 99 Kan. 52, syl. ¶2, 160 Pac. 985.)

The judgment is affirmed.

JOCHEMS, J., not participating.