[Civ. No. 1946.   Fourth Appellate District.—November 4, 1936.]

SARA MASTRO, Respondent, v. THE CITY OF SAN DIEGO (a Municipal Corporation), Appellant.

332

C. L. Byers, City Attorney, D. L. Ault, City Attorney, and James J. Breckenridge, Deputy City Attorney, for Appellant.

A. T. Procopio and John Coker for Respondent.

BARNARD, P. J.—This is an action for damages for personal injuries. The plaintiff was injured about six o'clock P. M. on November 24, 1933, as she was standing on the sidewalk at or near the intersection of Market Street and 33d Street, in the City of San Diego. The accident occurred when a police ambulance, which was being driven north of 33d Street, collided with an automobile which was being driven east on Market Street, as a result of which the private automobile ran over the curb and struck the plaintiff. Shortly before the accident the ambulance was driven out Market Street in an easterly direction and turned south on 33d Street. The driver found. 33d Street closed at a point two blocks south of Market Street and, turning around, returned to Market with the intention of proceeding thereon to another street which was open. Market Street was protected with boulevard stop signs and the intersec-

tion in question was an obstructed corner within the meaning of the California Vehicle Act. There is evidence that the driver of the ambulance, as he turned into Market Street from 33d Street, failed to stop at the stop sign, that he cut the corner, that he was traveling at a speed of thirty-five miles an hour, that the other car was just entering the intersection, and that the collision occurred in such a manner as to force the other car over the curb and upon the sidewalk. A jury awarded the plaintiff $5,500 as against the city and this appeal was taken from the judgment.

This action is based upon section 1714½ of the Civil Code and section 144 of the California Vehicle Act as in force at the time of the accident. It is conceded that the police ambulance was being used at the time in answering an emergency call, and the main contention of the appellant is that the sections just referred to have no application in such a situation. It is argued that this case comes within the exception arising from the provisions of section 8½ and section 132 of the California Vehicle Act, as these sections then stood. The first of these sections included in its definition of an authorized emergency vehicle an automobile operated by a police department in responding to an emergency call. The second gave the right of way to an authorized emergency vehicle when operated upon official business and when the driver thereof sounded an audible signal by siren. It further provided that the driver thereof should not be relieved from the duty to drive with due regard for the safety of others using the highway, nor from the consequences of an arbitrary exercise of the right of way thus given.

The appellant relies particularly on the case of *Armas* v. *City of Oakland*, 135 Cal. App. 411 [27 Pac. (2d) 666, 28 Pac. (2d) 422]. While there is a conflict between some of the views expressed in the opinion in that case and those set forth in *Lossman* v. *City of Stockton*, 6 Cal. App. (2d) 324 [44 Pac. (2d) 397], we are not concerned with that conflict under the circumstances here appearing. In the Armas case not only was the plaintiff guilty of contributory negligence but it appeared, without conflict, that a siren was sounded by the emergency vehicle in question. Even under the doctrine laid down in that case a city would be liable under section 1714½ of the Civil Code where the negligence

of the officer or employee of the city was not excused by some provision of the Vehicle Act. The only provisions of the California Vehicle Act which might furnish such an excuse in the instant case are sections 8½ and 132, above referred to. Under these sections the operator of an authorized emergency vehicle who is responding to an emergency call is given special privileges only when he sounds a siren. The officer or employee may waive this privilege and he may not claim a special right of way unless such an audible warning is given. (*Russell* v. *Smith,* 12 Cal. App. (2d) 399 [55 Pac. (2d) 562].)

In *Rogers* v. *City of Los Angeles,* 6 Cal. App. (2d) 294 [44 Pac. (2d) 465], the court said:

"In support of their contention relating to the insufficiency of the case against them, appellants place their reliance upon section 132 (b) of the California Vehicle Act (Deering's Gen. Laws, 1931, Act 5128, vol. 2, p. 2515, Stats. 1929, p. 542), which reads: 'The driver of a vehicle upon a public highway shall yield the right of way to any authorized emergency vehicle when the latter are operated upon official business and the drivers thereof sound audible signal by siren. This provision shall not relieve the driver of any authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall it protect the driver of any such vehicle from the consequence of an arbitrary exercise of such right of way.' The jury, at the request of defendants, was instructed upon the law contained in this section, including definition of the word 'arbitrary'. It is admitted that the ambulance was an authorized emergency vehicle and that it was being operated on official business. (California Vehicle Act, secs. 8½ and 120, Deering's Gen. Laws, 1931, vol. 2, pp. 2455, 2511.) The extent to which the siren was being audibly sounded was the subject of testimony which was somewhat in conflict. Nearly all witnesses heard the siren, many of them declaring that it sounded at 29th street three or four blocks north of Jefferson, and then did not sound again until it entered the intersection not far from the point of impact. One westbound motorist on Jefferson declared he did not hear it at all until just as the ambulance was entering the intersection. 'The weight to be given negative testimony, where it is claimed that

signals were not given, is a question for the jury; and such evidence is sufficient to sustain a verdict even though it conflict with other evidence that a warning was actually given. (Citing cases.)' As above indicated, the traffic signal was closed to north and south bound traffic when defendants' vehicle undertook to cross the intersection, which was a busy one, against the signal, and the speed at which it was being driven was variously stated to be from thirty to thirty-five miles per hour."

A similar situation is here involved. The driver of this emergency vehicle failed to stop at a boulevard stop and cut the corner at an excessive rate of speed. If no siren was sounded the city was not relieved from liability under any view of the various statutes referred to. The issues as to whether an audible warning by sounding a siren was given and as to whether the driver attempted to take and exercise the right of way in an arbitrary manner were submitted to the jury under appropriate instructions.

While the appellant concedes that there is some conflict in the evidence as to whether or not a siren was sounded on this occasion, it is argued that the conflict is not substantial since the evidence, as a whole, shows that most of the people on this corner at the time had come from nearby buildings for the very reason that they had heard such a siren. It does appear that the siren was sounded as the police ambulance proceeded east on Market Street and turned south on 33d Street, and that certain people were attracted to the scene by hearing the same. There is a substantial conflict, however, as to whether the siren was sounded as the ambulance reentered Market Street after it was turned around on 33d Street. The police officer who operated the ambulance and another officer who accompanied him testified that the siren was sounded continuously. Another witness testified that the siren was sounded as the ambulance turned around two blocks south of Market and "that the ambulance was making that sound all the way up 33d Street", although she did not specifically say that the siren was sounded as the ambulance reentered Market Street and turned the corner. On the other hand, the two occupants of the other car involved in the accident testified that they heard no sound of a siren, and the re-

spondent and two other witnesses testified that no siren was sounded as the ambulance traversed the last block and as it reentered Market Street. The question was one of fact for the jury and the evidence is sufficient to sustain its finding thereon.

█ The appellant contends that the court committed error in permitting the respondent "to introduce the greater part of her evidence in chief under the guise of rebuttal testimony; and likewise erred in permitting plaintiff to introduce entirely new matter in her closing argument under the guise of rebuttal with no opportunity on the part of defendant to reply". Four witnesses in rebuttal were called by the respondent. When the first of these was called a general objection was made to the effect that the witness was the respondent's son and should have been called in her case in chief. The court informed counsel that he could not sustain an objection to a particular witness but suggested that, if desired, an objection could be made to any particular subject-matter sought to be brought out. Throughout the examination of the four witnesses no objection was made to any question on the ground that it was not proper in rebuttal, with one exception, and then the objection was properly overruled on the ground that the matter objected to was merely preliminary. It should be further observed that the court had power, on the request of a party, to permit further evidence which was not strictly rebuttal. █ With respect to the attack on the closing argument the appellant admits that the matter does not appear in the record and the only claim made is that counsel placed on a blackboard before the jury a number of mathematical calculations with respect to rates of speed of automobiles in terms of feet per second. Nothing appears to indicate any abuse of discretion on the part of the court and the point is entirely without merit.

█ It is next contended that the amount of the damages awarded is excessive. With respect to the injuries suffered by respondent there is evidence that her right leg was broken below the knee, that her left leg was badly bruised, that her face struck against a fire hydrant, that her right middle finger was permanently impaired in function, that her right leg was in a plaster cast for seven weeks, and that

she was in bed for eight weeks. At the time of the trial, a year and eight months after the injury, she was unable to get about without crutches, her leg was still swollen and painful about the knee and ankle, she had frequent headaches and she was still suffering from pain in the right hip and side, resulting from the leg injury. There was evidence justifying the inference that some of her disabilities would be permanent. She was 53 years of age at the time of the trial and there was evidence that her loss of earning capacity would be between $7,000 and $17,000. Under the circumstances, the verdict cannot be held so grossly excessive as to immediately suggest passion and prejudice, or corruption on the part of the jury. (*Loeb* v. *Kimmerle*, 215 Cal. 143 [9 Pac. (2d) 199].)

Some contention is made that the court erred in failing to give two instructions requested by the appellant. The first concluded with a statement that in no event would the evidence justify a verdict against the appellant. For the reasons heretofore stated this instruction was properly refused. The other instruction was refused as already covered. It is not contended that the substance of this instruction was not otherwise covered, the only complaint being that the instruction covering the matter was so long that apparently the jury was unable to properly digest it. The objection thus raised is more novel than convincing.

It is finally urged that the court erred in denying a motion for a new trial. The argument on this point is confined to the matters already referred to, which require no further discussion.

For the reasons given the judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 28, 1936.