No. 38,802

JOSEPHINE DURAN, *Appellee,* v. MISSION MORTUARY, a Corporation, *Appellant* and *Cross-appellant,* and LORENZO F. BUTLER, *Appellant,* and ROBERT S. GRAY, *Appellant,* and RICHARD L. PHILLIPS, *Appellant* and *Cross-appellant.*

(258 P. 2d 241)

Opinion filed June 6, 1953.

J. B. Patterson, of Wichita, argued the cause, and A. W. Hershberger, Richard Jones, Wm. P. Thompson, H. E. Jones, and Jerome E. Jones, all of Wichita, were with him on the briefs for appellant and cross-appellant Mission Mortuary, and for the appellant Lorenzo F. Butler.

Wayne Coulson, of Wichita, argued the cause, and Howard T. Fleeson, Homer V. Gooing, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Garrit

H. *Wormhoudt,* and *Theodore C. Geisert,* all of Wichita, were with him on the briefs for the appellant Robert S. Gray, and for the appellant and cross-appellant Richard L. Phillips.

Bill *V. Hampton,* of Pratt, and *Tudor W. Hampton,* of Great Bend, argued the cause, and *Bill Murray,* of Pratt, and *S. R. Blackburn, Jerry M. Ward,* and *H. Lee Turner,* all of Great Bend, were with them on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action for damages for personal injuries sustained by plaintiff and for the wrongful death of her husband, Pete Duran, resulting from a collision between two motor vehicles.

Plaintiff Josephine Duran and her invalid husband were being transported from Pratt to the Veterans Administration Hospital at Wichita, in an ambulance owned by Mission Mortuary, a corporation, and driven by its employee Lorenzo F. Butler. A collision occurred between the ambulance and a sheriff's patrol car being driven by Richard L. Phillips, a deputy sheriff of Sedgwick county.

Plaintiff brought the action against Mission Mortuary, Lorenzo F. Butler, and Robert S. Gray, sheriff of Sedgwick county and Richard L. Phillips, his deputy. The jury returned a verdict for plaintiff and against all defendants, and assessed her damages for wrongful death at $15,000, and for her personal injuries, $8,500.

Defendant Phillips cross-petitioned against defendants Mission Mortuary and Butler for his personal injuries. The jury returned a verdict against Phillips and in favor of Mission Mortuary and Butler. Defendant Mission Mortuary cross-petitioned against Phillips and Gray to recover damages sustained to its ambulance. The jury returned a verdict against Mission Mortuary and in favor of Phillips and Gray.

Defendants Mission Mortuary and Butler have appealed from the judgment in favor of the plaintiff, and defendant Mission Mortuary has appealed from the judgment against it on its cross-petition. Phillips and Gray have appealed from the judgment in favor of the plaintiff, and defendant Phillips has appealed from the judgment against him on his cross-petition.

For convenience, the parties will be hereinafter referred to as follows: Appellee Josephine Duran as plaintiff; appellant and cross-appellant Mission Mortuary as defendant mortuary; appellant Lorenzo F. Butler as defendant Butler; appellant Robert S. Gray as defendant Gray or sheriff, and appellant and cross-appellant Richard L. Phillips as defendant Phillips or deputy sheriff.

The pertinent facts may be summarized as follows: On October 31, 1949, Pete Duran employed the defendant mortuary to transport him and his wife by ambulance to the Veterans hospital at Wichita. The ambulance was driven by its agent, defendant Butler. Plaintiff was riding in the ambulance as attendant at the request of the mortuary. Their destination was the Veterans hospital where Pete Duran was to be treated surgically. The hospital is located on the east side of Wichita. The city limits at that time were immediately east of the hospital grounds. These grounds are situated on the north side of Kellogg, an east and west thoroughfare, which is a wide concrete highway providing four lanes for moving traffic, two eastbound and two westbound, with an additional area for parallel parking on either side. There are two entrances to the hospital grounds, one at its west boundary and one near its east boundary. When defendant mortuary's ambulance approached the west gate of the hospital grounds, it was moving slowly. Pete Duran was on a cot in the rear portion of the ambulance. Plaintiff was sitting in a chair at his side. John Duran, Pete's brother, was sitting on the right of the front seat of the ambulance beside the driver. The ambulance siren was silent but the red lights on the top front of the ambulance were illuminated. Traffic was heavy. Butler determined to go on to the east gate. On the night in question, defendant Phillips, deputy sheriff, was assigned to road patrol. About 6:20 p. m. he was driving a sheriff's patrol car when he received a message informing him of a fatality and bad injury accident east of the city limits on Kellogg. He had general instructions to get to this accident in a hurry. The dispatcher from the sheriff's office informed him by radio of the accident and that a Gordon ambulance had also been dispatched to the place of the accident. Phillips proceeded east on Kellogg. His sheriff's patrol car was equipped with two 4½ inch flashing red lights over the windshield, one on each corner, and a battery-operated siren with a lock switch. When he first received the message, he turned on the red lights and the siren. As he neared the intersection of Oliver and Kellogg streets, about ½ mile west of the hospital, he turned off his siren to listen for the Gordon ambulance which he was expecting. The Gordon ambulance came south on Oliver and turned east on Kellogg. Phillips testified he then turned on his siren and went through the intersection on a red light. The Gordon ambulance was about 1½ blocks in front of him when he got through the intersection. About halfway between the hospital gates, defendant Butler, driver of the mor-

tuary ambulance, heard the siren of the Gordon ambulance to the rear. He pulled over to the right-hand side of the street, permitting the Gordon ambulance to pass on his left and to continue on east. After the Gordon ambulance had passed, defendant Butler looked in his rear view mirror on the left side of defendant's ambulance and saw nothing unusual. There were lights of motor cars a half to three-fourths block behind him. Butler undertook to make a left-hand turn back into the lane nearest the center and then north across the street to go into the east gate of the hospital grounds. When Butler had almost completed the turn and his ambulance was about in the center of Kellogg street, he heard brakes screaming behind him. He looked out the left window and saw the red lights of the approaching car. At that time his ambulance was in high gear. He tried to accelerate it to get out of the way, but did not succeed and the front end of the sheriff's patrol car collided with the left rear end of the ambulance. Pete Duran and the plaintiff were both thrown out the rear of the ambulance onto the pavement, Pete Duran sustaining serious injuries resulting in his death two days later, and plaintiff sustaining serious personal injuries by reason thereof.

Plaintiff's petition alleged that the defendants mortuary and Butler were guilty of negligence in making a left-hand turn from a right-hand lane across Kellogg for the purpose of entering a private driveway without giving any signal or warning of the driver's intention to so do, and in making such left-hand turn in such close proximity with other moving vehicles as to constitute an immediate hazard, without ascertaining that the turn in crossing the street could be made safely, and in failing to keep a proper lookout for others using the highway, and in failing to remain at a standing position until the left-hand turn could be made safely.

Her petition further alleged that defendant Phillips was driving the sheriff's patrol car on his own behalf and on behalf of defendant Gray, and was on duty in furtherance of the business of the office of the sheriff in proceeding to investigate an automobile accident on a highway in the county; that their negligence consisted of operating the patrol car on a city street at a high and excessive rate of speed, in excess of 50 miles per hour, and at such an excessive rate of speed that after sliding the wheels of the patrol car a distance of 152 feet, it struck the ambulance in which the plaintiff was a passenger with such force that it was pushed after the impact a distance of 46 feet; in failing to reduce the speed of the patrol car, stop, turn

out, or to do anything to avoid the collision, and in failing to keep the patrol car under proper control under the circumstances alleged, and in failing to keep a proper lookout for others using the highway. Plaintiff seeks recovery due to the concurrent acts of negligence on the part of all the defendants.

The defendants mortuary and Butler answered the petition admitting that the collision occurred at the time and place alleged, and that the plaintiff and her husband were at the time riding in their ambulance driven by Butler, their employee and agent, and denied that Butler was in anywise negligent. They further answered that if the plaintiff sustained any damage, the same resulted solely and proximately from the negligent acts of defendants Gray and Phillips, as alleged in plaintiff's petition, and such acts of negligence were admitted by defendants mortuary and Butler; that defendant Phillips was responding to an emergency call at the time of the collision; that he was driving without due regard to the safety of other persons using the street, as alleged in the plaintiff's petition.

Defendant mortuary, for their cross-petition against defendants Gray and Phillips, alleged that due to their negligent acts, as alleged in plaintiff's petition, defendant mortuary's ambulance was damaged in the amount of $784.34 for which recovery was asked against Gray and Phillips.

Defendants Gray and Phillips answered plaintiff's petition and the cross-petition of defendants mortuary and Butler by way of a general denial, admitting however that defendant Gray was at all times mentioned in plaintiff's petition the duly elected, qualified, acting sheriff of Sedgwick county; that defendant Phillips was at all times therein mentioned a duly appointed, acting deputy sheriff of Sedgwick county under appointment by defendant Gray, admitting that the collision occurred at the time and place alleged in plaintiff's petition, and further alleging that defendant Phillips was responding to an emergency call in an authorized emergency vehicle in the course of his duties as deputy sheriff of Sedgwick county, and was at the time exercising all care and caution required under the conditions, and further alleging that if the plaintiff suffered any damage from the collision, such damage was caused solely and proximately by the negligence of defendant mortuary and its agent Butler, as alleged in plaintiff's petition. Phillips, by his cross-petition against defendants mortuary and Butler, incorporated the provisions of his answer aforesaid, and alleged that

in the exercise of his duties as deputy sheriff he was driving a 1949 Ford sedan in an easterly direction on Kellogg street in the city of Wichita; that said automobile was a part of the vehicular equipment of the sheriff's department of Sedgwick county, and as such was an authorized emergency vehicle; that defendant Phillips was at the time responding to an emergency call on a fatal accident which occurred near the 7000 block on east Kellogg. In responding to said emergency call, defendant at all times sounded audible signal by siren, and emergency lights, and operated said car with reasonable care and caution under the circumstances; that as he approached the 3300 block on Kellogg, the defendant Butler, agent of the mortuary, was operating an ambulance and that Butler had caused the ambulance to come to a halt at a curbing on the south side of Kellogg street at a point opposite the east entrance to the hospital, and as defendant Phillips drove easterly on said street, defendant Butler negligently and wantonly turned his ambulance to the left toward the center of Kellogg directly in front of the sheriff's patrol car, without giving any warning or signal of his intention to so do, and defendant Butler failed to turn aside, stop, or do any other act to avoid the collision; that by reason of the negligence and wantonness of defendant Butler in turning to the left in front of the patrol car driven by defendant Phillips, the vehicle of defendant Phillips struck the ambulance driven by defendant Butler on the left rear fender, from which collision defendant Phillips suffered serious injuries; that the negligence of defendant mortuary and its agent Butler was the direct and proximate cause of the collision in that they failed to yield the right of way to an authorized emergency vehicle, when defendant Butler heard or should have heard the audible signal by siren being made, and in failing to stop and remain at the right-hand curb of Kellogg street until the sheriff's car had passed, and in attempting to make a left-hand turn into a private driveway without giving any signal of his intention to so do, when other vehicles were so close as to constitute an immediate hazard, and in attempting to make the left-hand turn on a four lane highway from the right-hand curb, in utter disregard of the safety of others, and in failing to keep a proper lookout and to stop, turn aside and avoid the collision. On the issues thus joined, the case was submitted to the jury which returned its general verdicts as hereinbefore related, and at the same time returned its answers to special interrogatories submitted by the court as follows:

"1.   Q. Was Richard L. Phillips responding to an emergency call at the time of the collision.

"A. Yes.

"2.   Q. At what speed was Richard L. Phillips driving the patrol car immediately before he saw the Mission Mortuary ambulance?

"A. Well in excess of 65 miles per hour.

"3.   Q. Was the siren on the patrol car being sounded immediately prior to the collision?

"A. No.

"4.   Q. Were the red lights on the sheriff's patrol car flashing immediately prior to the collision?

"A. Yes.

"5.   Q. Could Richard L. Phillips have avoided the collision by the exercise of ordinary care, after he could, in the exercise of ordinary care, have seen that the Mission ambulance was in his path?

"A. Yes.

"6.   Q. If you answer question number 5 in the affirmative, state how he could have done so.

"A. He had ample distance to stop if he had been driving with ordinary care.

"7.   Q. Was Richard L. Phillips confronted by an emergency when he observed the Mission ambulance in his path?

"A. Yes.

"8.   Q. If you answer question number 7 in the affirmative, then state whether any act of Phillips caused or contributed to cause the emergency.

"A. Driving at an excessive rate of speed.

"9.   Q. What prevented Richard L. Phillips from turning the patrol car to the south and passing to the rear of the Mission ambulance?

"A. Driving at high rate of speed, and possible traffic congestion on right side of the road.

"10.   Q. If you find that Richard L. Phillips was guilty of any negligence, which was a proximate cause of the collision, state fully what the negligence was.

"A. He was negligent in driving at an excessive rate of speed."

Numerous post-trial motions were filed by the respective parties. Only those pertinent to the issues argued on appeal will be considered here.   Defendants Gray and Phillips contend that the answer to special question No. 3 should have been set aside and disregarded on the ground that it was not supported by and is contrary to the evidence, and their argument is based upon certain language in the opinions of this court that positive testimony is to be given greater probative force than negative testimony.

Witnesses Leon Castle and his wife Leila were occupying a car proceeding east directly behind the defendant mortuary's ambulance, both of whom testified they saw the patrol car pass them with the red lights burning on the car but they did not remember hearing the siren.   Witness John Duran, who was riding in the

front seat of the mortuary ambulance, and the defendant Butler, said they did not hear the siren on the patrol car as it passed them. Defendant Phillips testified that he turned off the siren on the patrol car at a point approximately ½ mile west of the point of the accident and waited for the Gordon ambulance to pass. He then turned the siren back on and it was sounding immediately prior to the collision. Two other witnesses testified for the defendant that the siren was sounding on the patrol car. Defendants contend that the testimony of the witnesses who did not remember hearing, or that they did not hear, the siren as it passed them has no probative force and that such testimony is insufficient to overcome the positive testimony that it was being sounded.

In an extensive annotation, 162 A. L. R. 103, the rule is laid down with reference to "signals not heard" and it is there stated:

"Statements on the witness stand (in some instances corroborated by similar testimony), by persons who were in vehicles as a train approached the crossing and who were shown to have been listening or otherwise attentive, that they did not hear signals frequently have been held to have sufficient probative force to sustain a finding that signals were not given."

Authorities in many states are cited following this rule, including our own state. This court from its earliest decisions recognized that witnesses frequently testify with different degrees of positiveness and assurance. In *Muscott v. Stubbs*, 24 Kan. 520, we said:

"Equally credible witnesses will often speak of a past event in a different manner,—one with positiveness and assurance, and the other with doubt and hesitation; yet it does not follow that a jury must credit the former in preference to the latter, or that, if they fail so to do, a court is justified in setting aside the verdict as against the evidence." (Syl. 1.)

Ordinarily a witness who testifies that he saw or heard something is of greater value than the testimony of another who simply says he did not see or hear an incident. If all other things are equal, positive testimony preponderates over that which is strictly negative, but the trier of the facts should give consideration to the attending circumstances such as the opportunity and attention of the witnesses. What is deemed negative testimony, such as that a siren or whistle was not sounded, is not without force and value if the witness had unimpaired hearing, was giving attention and listening for the siren or whistle at the time of an accident and testifies none was sounding. (*Davis v. Atchison, T. & S. F. Rly. Co.*, 135 Kan. 96, 9 P. 2d 990.)

In the instant case, the witnesses heard the siren on the Gordon

ambulance which immediately preceded the patrol car, but heard no siren on the patrol car as it passed them. Their evidence, perhaps less assuring than that of Phillips and his witnesses who were standing near the scene, was entitled to proper consideration by the jury. Defendants Gray and Phillips requested and the court gave the following instruction without objections concerning the probative force of positive and negative evidence:

"You are instructed that the positive evidence of a small number of witnesses that they saw or heard a given thing occur will outweigh the negative testimony of a greater number of witnesses that they did not see or hear it, provided the witnesses are equally credible; provided also that the witnesses have the same relative means and opportunity to see or hear the occurrence, and provided further the witnesses were giving the same attention."

The instruction properly stated the language most favorable to defendants Gray and Phillips, and they cannot now be heard to complain that the issue was not properly presented to the jury.

Defendants Gray and Phillips further contend that inasmuch as defendant Phillips and two other witnesses testified that the siren was sounding on the patrol car, the jury was bound to believe this testimony and return an aswer to question No. 3 that the siren was sounding. Again, in *Muscott v. Stubbs,* supra, we said because one witness speaks positively and another doubtingly, it does not follow that the jury must credit the former rather than the latter. A jury is bound by neither statement but may credit either. In the case of *Gibbs v. Central Surety & Ins. Corp.,* 163 Kan. 252, 257, 181 P. 2d 498, Mr. Justice Thiele reviews many of our former decisions on this question holding to the effect that the triers of facts are not bound to believe evidence, the truth of which is not admitted merely because no direct testimony to the contrary is introduced. (*Ragland v. Watkins Nat'l Bank,* 129 Kan. 426, 283 Pac. 632; *Weber Implement & A. Co. v. Dubach,* 132 Kan. 309, 295 Pac. 979; *Kallail v. Solomon,* 146 Kan. 599, 72 P. 2d 966.) In substance, a court or jury is not required to believe the testimony of a witness or witnesses merely because there is no direct evidence to contradict the same. In the instant case, the findings disclose that the jury did not believe defendant Phillips or the other two witnesses that the siren on the sheriff's car was being sounded, and we are without power to nullify the disbelief. The disbelief may have resulted from the demeanor of the defendant, his witnesses and from the very nature of the evidence produced by them as it applied to all the attending circumstances surrounding the situation and other competent evi-

dence in the case. (*Kallail v. Solomon,* supra.) The answer to special question No. 3 was supported by evidence, approved by the trial court and will not be disturbed here.

Defendants Gray and Phillips further contend that the violation of the rules of the road by Phillips did not constitute negligence, relying on G. S. 1949, 8-536, which provides:

"The prima facie speed limitations set forth in this article shall not apply to authorized emergency vehicles when responding to emergency calls and the drivers thereof sound audible signal by bell, siren, or exhaust whistle. This provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street, nor shall it protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others."

It was admitted and the court so instructed that Phillips was driving an authorized emergency vehicle as defined by G. S. 1949, 8-501, and that the evidence disclosed without conflict that he was responding to an emergency call in the patrol car equipped with red lights and siren for such purpose.

Under the mentioned statute, the operator of an authorized emergency vehicle who is responding to an emergency call is given special privileges only when he sounds audible signal by bell, siren or exhaust whistle. The driver of such vehicle may waive the exemption from the statutes applying to speed limitations, unless such audible signal is given. The jury in its answer to special question No. 3 found that the siren on the patrol car was not sounded. This answer is conclusive as hereinbefore mentioned. Inasmuch as no siren was sounded, defendant Phillips cannot claim immunity under the mentioned section from statutory speed regulations applicable at the time and place. (*Mastro v. City of San Diego,* 17 Cal. App. 2d 331, 62 P. 2d 407.) In view of the foregoing, it is unnecessary to comment on the second provision of section 8-536.

Defendant Phillips complains of the court's refusal to give his requested instructions Nos. 2 and 3, setting out the duty and privileges as set forth in G. S. 1949, 8-536, and properly defining their terms. The court covered these two instructions by giving instruction No. 4, quoting the statute in full and defining the term "due regard" as "due care." We have examined the instructions given as a whole and find the court fairly presented the pertinent law applicable to the case. It is not necessary that the court define the meaning of every word or phrase used in a statute. To so require would result in instructions of interminable length, with definition following defi-

nition. (*State v. Inverarity*, 150 Kan. 160, 161, 92 P. 2d 45.) More-over, the defendants' two requested instructions were predicated on the theory that the siren on the patrol car was being sounded. The jury found otherwise by its answer to question No. 3, and the requested instructions, therefore, became immaterial.

Defendants complain of the court's refusal to require the jury to make their answer to special question No. 6 more definite and certain. We think the jury returned a proper answer to the question as framed, and the court did not err in refusing the request.

Defendant Phillips contends he is entitled to judgment in his favor on the answers to the special interrogatories returned by the jury. Again, he seems to predicate his theory on the ground that his patrol car siren was sounded immediately preceding the collision and that his excessive speed alone was not sufficient to render him liable. The evidence is undisputed that the traffic in the immediate vicinity of the collision was heavy and congested. Phillips admitted that he was traveling 55 miles per hour. The jury in answer to question No. 2 found he was traveling in excess of 65 miles per hour, which is sustained by the evidence. He testified when he first saw the defendant ambulance he applied his brakes and "froze" to the steering wheel; that with his brakes applied, he laid down rubber skid marks for 152 feet, burning approximately one-half inch of rubber from the tires, before the impact, striking the ambulance on the left rear corner, pushing it to the side a distance of approximately 40 feet. The evidence disclosed that a car being driven 55 miles per hour with its brakes applied could be stopped within 150 feet. The jury found, in answer to question No. 6, that Phillips had ample distance to stop if he had been driving with ordinary care; in answer to question No. 8 that he was driving at an excessive rate of speed. Without prolonging this already lengthy opinion, we do not deem it necessary to set forth the entire testimony supporting the answers to the special questions, and that showing the defendant guilty of negligence. It may be stated, one who admittedly drives an automobile at a speed of 55 miles per hour in congested traffic in a metropolitan city without giving any signal or alarm, is not only guilty of negligence but guilty of a reckless disregard of the safety of others. The record discloses ample evidence of negligence on the part of defendant Phillips to sustain the verdict of the jury.

Defendants mortuary and Butler contend that Butler was not

guilty of negligence. The evidence discloses that the traffic at the time and place was heavy and congested. As the ambulance driven by Butler approached the west gate to the hospital, he was unable to make a left-hand turn into the grounds. He proceeded on to the east gate, when he heard the siren of the Gordon ambulance. He pulled over to the right-hand or south side of Kellogg street and stopped. He permitted the Gordon ambulance to pass and immediately made a left-hand turn from the right-hand lane of the street without giving any signal of his intention to do so, and proceeded to cross the street to enter the east gate. He looked back and saw lights of other cars but continued with his turn and his ambulance was struck as he reached the center of the street. No special questions were submitted with reference to the negligence of the defendants mortuary and Butler, and the jury returned a general verdict in favor of the plaintiff and against each of them. It cannot be said that one is free from negligence who, from a standing position, makes a left-hand turn with his automobile from a right-hand lane, on a main thoroughfare where traffic is heavy and congested, to cross the street for the purpose of entering a private driveway without ascertaining that said turn and crossing can be safely made. In the instant case, the patrol car had two red lights on the front of the car which were illuminated and blinking. If the defendant Butler had been keeping a proper lookout, he could have seen the patrol car coming and remained in a stationary position until it passed safely, and thereby avoided the collision. One will be presumed to have seen that which he should and could have seen in the exercise of due care. Without reviewing the entire testimony, suffice it to say there was ample evidence to sustain the jury's finding by its general verdict that the defendant Butler was guilty of negligence.

Defendants mortuary and Butler further contend that the negligence of Phillips was the sole and proximate cause of the injury, and that they are thereby relieved from liability as a matter of law. The record discloses the negligent acts of both defendants Butler and Phillips continued up to the time of the impact. In *Tilden v. Ash,* 145 Kan. 909, 67 P. 2d 614, we stated:

"Substantially concurrent negligent acts of two or more persons render all liable as joint tortfeasors where the act or acts of each contribute to the injury. In such circumstances the degree of culpability of each is immaterial and each is liable for the entire damage." (Syl. ¶ 2.)

The rule is well stated and our authorities ably analyzed in the case of *Reed v. Mai,* 171 Kan. 169, 175, 231 P. 2d 227, where we said:

"Broadly stated, the rule in this jurisdiction, and the one supported by the great weight of authorities in other jurisdictions, is that where a third person sustains indivisible injuries in a motor vehicle collision as a result of negligence on the part of the drivers of two other motor vehicles which is so related and interwoven in point of time that it appears the injuries would not have been received by the third person except for the successive and combined negligence of the others, those whose acts so united in producing the injuries will be held jointly and severally liable to the injured party and may be sued severally or jointly at his election. This, we may add, is the rule not only where the tort-feasors are acting together, or where there is a common design or purpose, or concert of action, or a breach of common duty owing by them, but also where their acts of negligence are separate and independent so long as they are so closely related and interwoven in point of time as to directly contribute to the cause of the accident. For well recognized legal treatises and cited decisions supporting the foregoing rule see 38 Am. Jur., Negligence, 946, § 257, also 65 C. J. S., Negligence, 639, 674, 685, §§ 102, 110(a) (b)."

See, also *Taggart v. Yellow Cab Co. of Wichita,* 156 Kan. 88, 131 P. 2d 924; *Rowell v. City of Wichita,* 162 Kan. 294, 176 P. 2d 590; *Banbery v. Lewis,* 173 Kan. 59, 244 P. 2d 202.

Under the facts disclosed by the record in this case, there can be no question but that the negligence of defendants Butler and Phillips was so closely related and interwoven in point of time as to directly contribute to the cause of the accident, and that it was due to their concurrent acts that plaintiff sustained the damages complained of.

Defendant Gray contends that the trial court erred in failing to sustain his demurrer to the plaintiff's evidence, and predicates his contention on the ground that as sheriff of Sedgwick county he was not liable for the negligent acts of his deputy, Phillips. Plaintiff and defendants mortuary and Butler contend that Gray as sheriff, and his sureties, are liable for the negligent conduct of Phillips. The parties rely on G. S. 1949, 19-805, which provides:

"Each sheriff may appoint such and so many deputies as he may think proper, for whose official acts and those of his undersheriffs he shall be responsible, and may revoke such appointments at his pleasure; and persons may also be deputed by such sheriff or undersheriff in writing, to do particular acts; and the sheriff and his sureties shall be responsible, on his official bond for the default of misconduct of his undersheriff and deputies."

We have held that sheriffs are responsible for the acts of their deputies, performed or committed in carrying out their official duties. (*Pfannenstiel v. Doerfler,* 152 Kan. 479, 105 P. 2d 886;

*Zurbucken v. Glens Falls Indemnity Co.,* 158 Kan. 599, 601, 149 P. 2d 617.)

The controversy concerning the mentioned statute is whether defendant Phillips, as deputy sheriff, was engaged in the performance of an official act at the time of the collision.

It is admitted that defendant Gray was sheriff of Sedgwick county; that defendant Phillips was his duly appointed and acting deputy, and was at the time of the collision proceeding on an emergency trip to investigate an automobile accident. The evidence discloses that, as deputy sheriff, his duties were that of a patrolman. He was furnished with a sheriff's car equipped with two red lights, a siren and radio indicating that it was to be used for patrol and emergency duties and subject to call at all times. His orders from the sheriff were to patrol the highways, and when an accident was reported to him, to get to the scene as soon as possible; that on the evening in question while patrolling the highways of the county in the mentioned car, he received a radio message from the sheriff's dispatcher to go to a fatal injury accident in the county, east of the point of the collision in this case. In response to the message, he turned on his red blinker lights and siren, and immediately proceeded to perform his duty, and in doing so he struck the ambulance as hereinbefore related. Admittedly, he was patrolling the highways in the manner and means provided by the sheriff to enable him to do so. In driving the patrol car, he was doing precisely what his duties required him to do, and what he had no right to do except in the discharge of his official duty. He had neither the right to patrol the highways nor drive the patrol car except as a deputy sheriff, and there is nothing in the pleadings or proof that anything he did (except his negligence) was not done in the discharge of his official duty. The mentioned facts and others contained in the record justify the inference that Phillips was acting in an official capacity while transporting himself between two places in the performance of his official duty, and whatever he was doing was being done, not as an individual, but as an officer acting, not only by virtue of, but under color of, his office. The fact that the injury caused by Phillips resulted from his failure to exercise ordinary care, and that there is an obligation of ordinary care imposed upon every individual, does not serve to relieve the sheriff from liability, as Phillips was operating the automobile of the sheriff in the actual discharge of his duties as a deputy, and was not acting as an individual when the

wrongful act was done, causing the injury. Where, in the discharge of an official duty, an officer does not take that precaution or exercise that care which due regard for others requires, resulting in injury, his acts constitute misconduct.

The liability of a sheriff for the official acts of a deputy is not based upon the doctrine of *respondeat superior,* but on the fact that the deputy is his representative for whose acts he is liable as if they had been done by himself. For authorities supporting the foregoing rules of law, see: *Rich and Hahn v. Graybar Elec. Co.,* 125 Tex. 470, 84 S. W. 2d 708, 102 A. L. R. 171; *Rutledge v. Small et al.,* 192 S. C. 254, 6 S. E. 2d 260; *Hanratty v. Godfrey,* 44 Ohio App. 360, 184 N. E. 842; *U. S. F. & G. Co. v. Samuels,* 116 Ohio St. 586, 592, 157 N. E. 325; *Curnyn v. Kinney,* 119 Neb. 478, 229 N. W. 894; *Fidelity & Casualty Co. of N. Y. v. Boehnlein,* 202 Ky. 601, 604, 260 S. W. 353; *Jones v. Buckelew,* 247 Ala. 475, 25 So. 2d 23.

In view of what has been said, we are of the opinion that at all times pertinent herein, defendant Phillips was acting in an official capacity as deputy sheriff, as contemplated by G. S. 1949, 19-805, and that his negligent acts constituted misconduct for which the defendant Gray, sheriff, was responsible on his official bond, as provided in the same statute.

Defendants contend that the damages allowed for the wrongful death were excessive. The record discloses that Pete Duran was 55 years of age with a life expectancy in excess of 17 years, and that he had previously been earning $2,400 a year. He was survived by a widow and five minor children ranging in ages from one to thirteen years. In addition to the loss of his potential earning capacity, the jury had a right to consider as elements of damages, mental anguish, suffering or bereavement, loss of society, companionship, comfort or protection, loss of marital care, attention, advice, or counsel, loss of parental care, training, guidance and education, and it cannot be said that $15,000 was excessive for such losses.

Defendants contend that the damages allowed for plaintiff's personal injuries were excessive. The record discloses that plaintiff was confined to her home and unable to care for her children for several months. Medical testimony showed a severe wound in the side of her head, a large cut in the temporal region resulting in a scar to the forehead. She suffered brain concussion and bruises in her lower left back near the first lumbar region, all of which caused nervousness, dizzy spells, headaches and backaches, which contin-

ued for over a year from the date of the accident, and she will have some permanent injury to her back. It is unnecessary to relate all the testimony regarding plaintiff's injuries. We have examined the record and find the verdict returned by the jury is not excessive, nor does the record disclose that either verdict was rendered because of passion or prejudice.

In view of the foregoing, the judgment of the lower court must be affirmed.

It is so ordered.

PRICE, J., dissenting in part: I agree that at the time and place in question the deputy sheriff was engaged in the performance of an official act, namely, responding to an emergency call. I also agree that it is misconduct to drive an automobile in a negligent manner, but, in my opinion, it is not a "default or misconduct" within the contemplation of the statute (G. S. 1949, 19-805) for which the sheriff and the sureties on his official bond can be held liable.